# PEDERSON v. BOARD OF COMMISSIONERS OF BILLINGS COUNTY et al.

## (137 N. W. 484.)

**Counties — division — elections — certificate of votes.**

1. Upon a vote for county division, several precincts made returns of their respective votes upon state and county officials, etc., upon the printed blanks furnished for that purpose, and attached thereto by means of metallic fasteners the tally sheet used by them in counting the county division votes. However, the tally sheet so used contained enough writing and figures to con-

---

Note.—On the question of the necessity of contestant's showing error in election affecting result, see note in 83 Am. Dec. 750. And on the necessity of showing that error changed the result, see note in 84 Am. Dec. 268.

For irregularities which will avoid elections, generally, see note in 90 Am. St. Rep. 46.

The question of the effect on public election of wrongful disqualification of sufficient number of voters to have changed the result is treated in a note in 38 L.R.A. (N.S.) 1007.

form to the law as a certificate of the vote. *Held,* that it was the plain intent of the precinct officers to make a certificate of the votes so counted, and the case is distinguishable from cases where the tally sheet is merely returned with the ballots and other papers, and no attempt made towards certifying the result.

### Counties — division — election, contest of.

2. Four precincts made no return to the county board, and those were not counted. Upon this contest, however, the trial court examined enough of the ballots to said precincts to show that the result of the election could not be changed if every vote uncounted were conceded to be against county division. It was therefore useless to continue the count of the ballots.

### Counties — division — election, contest of.

3. Upon the election, friends of county division caused to be printed and distributed at the polls a large number of sticker ballots, being identical in reading with the official ballot, excepting that the sticker ballot was marked with the cross for division, instead of leaving the marking to be done by the voter. This unofficial ballot was to be attached by a gummed portion to the official ballot. *Held,* that such procedure is a violation of the plain purposes of our election ballot laws, and renders all such ballots void. *Held,* further, that the contestant has the burden of showing the number of stickers so used, and that enough were counted by the canvassing board to change the result of the election. In the case at bar the evidence produced does not show enough of such void ballots to change the result. Evidence of bystanders or election officials that there were "many of such stickers" is too indefinite to be acted upon by the court.

After deducting all ballots shown to be illegal and all ballots not produced from those precincts not canvassed, there still remains a majority for the creation of the new county, Golden Valley, and the trial court will so find.

Opinion filed June 29, 1912. Rehearing denied September 19, 1912.

Appeal by interveners from a judgment of the District Court for Billings County, *Templeton,* J., in plaintiff's favor in a proceeding to test the correctness of certain election returns.

Reversed.

*R. M. Andrews, George R. Robbins,* and *George A. Bangs,* for appellant.

Sheets of paper upon which was recorded the result of the county division votes became a part of the official canvass when folded and placed between the leaves thereof. State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231.

Inaccuracy and imperfections in the returns of precinct officers may be corrected by parol evidence. 10 Am. & Eng. Enc. Law, 829, note 9; Howard v. Shields, 16 Ohio St. 190; Powers v. Reed, 19 Ohio St. 189; People v. Vail, 20 Wend. 12; O'Laughlin v. Kirkwood, 107 Mo. App. 302, 81 S. W. 512; McEuen v. Carey, 123 Ky. 536, 96 S. W. 850; Stemper v. Higgins, 38 Minn. 222, 37 N. W. 95; McCrary, Elections, § 503; 5 Enc. Ev. 69; Broaddus v. Mason, 95 Ky. 421, 25 S. W. 1060; Jones v. Glidewell, 53 Ark. 161, 7 L.R.A. 831, 13 S. W. 723; State ex rel. White v. Scott, 171 Ind. 362, 86 N. E. 409; Prairie v. Lloyd, 97 Ill. 197; Stimson v. Sweeney, 17 Nev. 309, 30 Pac. 1000; Mayo v. Freeland, 10 Mo. 630; Dixon v. Orr, 49 Ark. 238, 4 Am. St. Rep. 42, 4 S. W. 774; Wheat v. Smith, 50 Ark. 266, 7 S. W. 161; Merritt v. Hinton, 55 Ark. 12, 17 S. W. 270; Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. 558.

Before the ballots are admissible in evidence in an election contest it must be made to appear affirmatively by the contestant that they are intact and genuine and have not been tampered with. McCrary, Elections, § 471, p. 346; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Davenport v. Olerich, 104 Iowa, 194, 73 N. W. 603; Doak v. Briggs, 139 Iowa, 520, 116 N. W. 114; DeLong v. Brown, 113 Iowa, 370, 85 N. W. 624; Fenton v. Scott, 17 Or. 189, 11 Am. St. Rep. 801, 20 Pac. 95; Hartman v. Young, 17 Or. 150, 2 L.R.A. 596, 11 Am. St. Rep. 787, 20 Pac. 17; Farrell v. Larsen, 26 Utah, 283, 73 Pac. 227; Fishback v. Bramel, 6 Wyo. 293, 44 Pac. 840; Eggers v. Fox, 177 Ill. 185, 52 N. E. 269; Coglan v. Beard, 65 Cal. 58, 2 Pac. 737; Tebbe v. Smith, 108 Cal. 101, 29 L.R.A. 673, 49 Am. St. Rep. 678, 41 Pac. 454; Rhode v. Steinmetz, 25 Colo. 308, 55 Pac. 814; Powell v. Holman, 50 Ark. 85, 6 S. W. 505; Newton v. Newell, 26 Minn. 529, 6 N. W. 346; Albert v. Twohig, 35 Neb. 563, 53 N. W. 582; Martin v. Miles, 40 Neb. 135, 5 N. W. 732; McMahon v. Crockett, 12 S. D. 11, 80 N. W. 137.

The following courts have approved the sticker ballots: Roberts v. Bope, 14 N. D. 311, 103 N. W. 935; Snortum v. Homme, 106 Minn. 464, 119 N. W. 59; Erickson v. Paulson, 111 Minn. 336, 126 N. W. 1097; People ex rel. Bradley v. Shaw, 133 N. Y. 493, 16 L.R.A. 606, 31 N. E. 512; People ex rel. Goring v. Wappingers Falls, 144 N. Y.

616, 39 N. E. 641; State ex rel. Harkins v. Roundtree, 28 Wash. 669, 69 Pac. 404; Coughlin v. McElroy, 72 Conn. 99, 77 Am. St. Rep. 301, 43 Atl. 854; DeWalt v. Bartley, 146 Pa. 529, 15 L.R.A. 771, 28 Am. St. Rep. 814, 24 Atl. 185.

*W. F. Burnett* and *Engerud, Holt, & Frame,* for respondent.

When the evidence discloses that the county board's abstract was not properly made, and was not a tabulation of the precinct returns, but was made up in part from unauthorized data, it obviously loses its effect as evidence of what the aggregate vote was.   People ex rel. Judson v. Thatcher, 55 N. Y. 525, 14 Am. Rep. 312; People ex rel. Hardacre v. Davidson, 2 Cal. App. 100, 83 Pac. 161; Rhodes v. Driver, 69 Ark. 501, 64 S. W. 272; Londoner v. People, 15 Colo. 557, 26 Pac. 135; State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; Spencer v. Morey, Smith, Elec. Cas. 437; Gause v. Hodges, Smith, Elec. Cas. 291; Small v. Tillman, 2 Ellsw. Elec. Cas. 432.

·   He who claims the majority of the vote must prove that fact, whether he is contestant or defendant.   People ex rel. Judson v. Thatcher, 55 N. Y. 525, 14 Am. Rep. 312; Lawrence County v. Schmaulhausen, 123 Ill. 321, 14 N. E. 255; Scholl v. Bell, 125 Ky. 750, 102 S. W. 248; People ex rel. Hardacre v. Davidson, 2 Cal. App. 100, 83 Pac. 161; People ex rel. Keeler v. Robertson, 27 Mich. 116; Littlefield v. Newell, 85 Me. 156, 27 Atl. 156; High Extr. Legal Rem. §§ 629, 630.                                     :

Tally sheets cannot be accepted as substitutes for the returns prescribed by statute.   State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231; State ex rel. Davis v. Willis, 19 N. D. 209, 124 N. W. 706; People ex rel. Ryan v. Nordheim, 99 Ill. 553; Jackson v. Wayne, Cl. & H. Elect. Cas. 47; Chrisman v. Anderson, 1 Bart. Elect. Cas. 328.   Opinions of Justices, 68 Me. 582; Perry v. Whitaker, 71 N. C. 473; Simon v. Durham, 10 Or. 52.

There being no returns to furnish prima facie proof of what the vote was, the ballots themselves were the best evidence of the vote. Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Reynolds v. State, 61 Ind. 423; People ex rel. Keeler v. Robertson, 27 Mich. 129; Hartman v. Young, 17 Or. 150, 2 L.R.A. 598, 11 Am. St. Rep. 787, 20 Pac. 17; Sinks v. Reese, 19 Ohio St. 319, 2 Am. Rep. 397.

Sticker votes are void.   Waterman v. Cunningham, 89 Me. 295, 36

Atl. 395; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Atty. Gen. v. Duncan, — N. H. —, 78 Atl. 925; Re Wilcox, 27 R. I. 117, 60 Atl. 838.

BURKE, J. At the general election of 1910 there were submitted to the voters of Billings county four propositions to divide the county. The official certificate returned by the canvassing board showed that two of the new counties had been defeated. One of the new counties, Golden Valley, received 837 votes for and 756 votes against, according to the said certificate. A contest was instituted by plaintiff to test the correctness of the said returns, and the proceedings had in district court resulted in findings adverse to Golden Valley county, by whom this appeal has been taken.

Plaintiff has challenged the correctness of the election certificate in appropriate proceedings, and it becomes necessary to review the canvass in all precincts called to our attention by the contestant. These number some twelve. The first six precincts are so similarly circumstanced that we will dispose of them together.

1. The election returns from several precincts made by the township election officers were in the condition following: The regular statement or certificate of votes printed in the back of the poll book contained no forms for the certificate of the election returns upon county division. Instead of writing such certificate in the said returns, the election officers took the tally sheet prepared by themselves, totaled the votes thereupon, and attached it by metallic fasteners or by paste to the statement of the general vote. The officers of the said precincts testify that they thus intended the tally list to become a part of the certificate. Contestant refers to the case of State ex rel. Sunderall v. McKenzie, 10 N. D. 132, 86 N. W. 231, which he claims decides that the tally sheets cannot become part of the official returns. We think he has not correctly read the above opinion. It holds merely that the tally list is not *per se* part of the official return, for the very good reason that it is not certified. It is going a long step further to say that the tally sheet might not be incorporated into the election returns if properly certified, or that the election returns may not be supplemented by having attached thereto a duly certified tally list. We take it that the election officers were attempting to make a proper return of

the vote upon division. Finding no place upon the blank certificate furnished to them, they amended the certificate by adding thereto upon another sheet of paper physically attached thereto a statement of the votes as canvassed by them. These additional sheets of paper contain the statement, "Golden Valley County" for new county (in one instance) 137; against new county 26, and also included the marks made by the clerks in canvassing thus, "1111" for five votes, etc.

We are of the opinion that as so attached the whole became the election return for such precinct, and that it should not be rejected because the tally mark appeared thereon. The main point being that it was duly certified by the proper officers along with the original return sheets, which, by the way, consists of five pages itself fastened together in the poll book. If the contention of the contestant is correct, only the last sheet containing the signatures of the election officers would be competent as a return sheet.

The learned trial court, who reached a contrary conclusion, was mislead by the testimony of the auditor McGregor who was testifying to an unofficial return sheet that is attached to the poll book and perforated so as to be readily removed and mailed to the auditor for the benefit of the public. When questioned by the court about the official certificate which is sealed up until opened by the canvassing board, the auditor understood the inquiry to be about the unofficial statement above mentioned. Our conclusion, then, is that those votes should have been counted by the canvassing board unless otherwise defective.

2. The second attack upon the correctness of the returns made by the county canvassing board relates to four precincts from which there were received no returns. The canvassing board completed the count without making any effort to compel the precinct officers to make proper return for those four precincts. There were 126 votes cast in the whole of those four precincts for several state officers. Two of the ballot boxes from those precincts were opened, and the ballots counted, yielding a new gain for Golden Valley county of 35 votes. There remained uncounted in said precincts, however, 73 votes, which we will assume were all cast against Golden Valley county, leaving a net loss to the county of 38 votes, which, substracted from the return

made by county canvassing board of 81 majority, leaves the county with still a majority of 43 votes with which to meet the next ordeal.

3. The friends of Golden Valley and of Slope county had entered a combine and worked together. To aid in their work they had printed an unofficial ballot, very similar to the official ballot upon division, but with the squares crossed in favor of those two counties and against the other two. They had those blanket ballots gummed, and some voters merely pasted the unofficial ballot upon the official, and thus got it into the ballot box. We are clear that this is such an invasion of the spirit of the Australian ballot law that it should be discouraged. We see no excuse for such conduct. Our liberal laws upon voting are to insure the individuality of the voter, and prevent the influence thereof by outsiders and political workers. If a ballot all marked may be pasted over the official ballot, then we might as well repeal our extremely satisfactory ballot law. We therefore hold such ballots void. There was testimony that thirty sticker ballots were counted by the various officials. These should be deducted, but it still leaves a majority for division. It is true some evidence was introduced to show that the voting of stickers "as general" and that "many such stickers were used," but such general expressions lack the precision of facts, and cannot be considered. Other objections were stated in the contest notice, but are not supported by evidence.

The trial court will correct its judgment to show Golden Valley entitled to have its certificate certified to the secretary of state.

## On Rehearing.

BURKE, J. Respondent has filed a petition for rehearing, complaining principally of certain statement of fact contained in the opinion. He complains especially of the statement that the tally sheets upon county division were physically attached to the official certificate by the precinct officers. We have gone over the testimony again very carefully, and still believe the statements made by us warranted by the evidence. Only two of the poll books were attached to the statement of the case, although about ten were received in evidence. In one of those two the tally sheet is attached to the certificate by means of gummed strips of paper. The other was merely folded

between the leaves of the official certificate, but bears plain marks of having been attached to the certificate by means of a patented metallic fastener. Throughout the testimony it is stated that the other poll books were in the same general condition as those introduced. Two witnesses testified that they had examined the returns in the county auditor's office upon November 10th after election, and stated that "these certified statements from the precincts (naming those in dispute) were then with the county auditor." They intimate that some of the certificates were upon the unofficial sheets, but were in envelops addressed to the county auditor. A member of the county canvassing board testified that some of the certificates upon county division were "written right in the book . . . some were attached, and some were not, and some were pinned on. The ones that were pinned on we considered part of the canvass, we assumed that it was part of the official canvass."

On the other hand the witness McGregor, the only auditor, gives the testimony relied upon by respondent. His testimony is mostly narrated in the statement of the case, and it is hard to tell just what he means in much of his testimony, on account of referring to various returns held in his hands, but not so identified that he can now say which he meant. As an example of his testimony, we quote: "Ex. 1 is the only official return sent in by the precinct officers. Ex. 2 was in the poll book, Ex. 1, when I received it. Ex. 1, with the loose sheet, Ex. 2, folded in it, was all the canvassing board had before it." Now ex. 1 and 2 are before us, and the ones that show the same to have been fastened together as before stated. At the trial below, two of the precinct officers testified that they had fastened the two exhibits together and delivered them in that condition to the county officer. Again in Stecker precinct we find the following narration: "(Witness produces the poll book from Stecker.) Ex. 3 is the official return in my office . . . is precisely similar to Ex. 1, differing only as to number of votes. . . . In Ex. 3 (not attached but folded and between the leaves) there was found Ex. 4, which is same as Ex. 2." Ex. 3 and 4 are not before this court, therefore their exact condition is a matter of conjecture. From anything the witness states, the tally list might have been fastened to the returns by the precinct officials and removed by someone later, as was the case with Ex. 2.

However, as we view the matter, it is not so material how the precinct officers attached the tally sheet to the return. Whether they made a certificate upon the unofficial returns and mailed the same to the county auditor, or placed the crude tally sheets prepared by themselves in between the leaves of the certificate of election and mailed or delivered the same to the county auditor, they—in any event—intended to make it a part of the return to the county canvassing board, showing those figures. We believe the canvassing board was justified in counting the same, in the absence of any showing of fraud or mistake. The case of State ex rel. Sunderall v. McKenzie, supra, was based upon a very different state of facts. In that case the precinct officers had made a certificate showing the vote for superintendent of schools in the precinct. This certificate was forwarded to the county canvassing board, and counted by them. Upon an inspection of the tally lists in the front of the poll book from that precinct, it appeared that the precinct officers had made a mistake in the count, or rather had overlooked the women's vote entirely, and that the said certificate was not correct. One of the candidates sought by mandamus to compel the county canvassing board to reject the certificate and go back to the tally lists for the correct vote. This court held that the county canvassing board was bound by the certificate until overturned by contest. In this case the tally lists are not introduced to contradict the certificate of the precinct officers at all. They are part of the certificate of such precinct officers, prepared by them and sent in as such to the county canvassing board.

. The motion for rehearing is denied.